# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FRIANT WATER AUTHORITY,** *et al.*, | Case No. 1:14-CV-000765-LJO-BAM |
| **Plaintiffs,** | **MEMORANDUM DECISION AND ORDER RE EXCHANGE CONTRACTORS' MOTION TO INTERVENE (DOC. 24)** |
| v. | |
| **SALLY JEWELL, as Secretary of the UNITED STATES DEPARTMENT OF THE INTERIOR,** *et al.*, | |
| **Defendants.** | |

## I. INTRODUCTION/BACKGROUND

This suit concerns the United States Bureau of Reclamation's ("Reclamation") release of water from Millerton Lake/Friant Dam, features of the Friant Unit of the Central Valley Project ("CVP"), to supply water to the San Joaquin River Exchange Contractors Authority and its member districts ("Exchange Contractors")[1]. The Friant Water Authority and its member agencies (collectively, "Plaintiffs"), which also contract for and depend upon water deliveries from the Friant Unit, acknowledge the priority of the Exchange Contractors' contracts with Reclamation, but allege that Reclamation's actions are unlawful because the Exchange Contractors' demands should be satisfied first from sources other than Millerton. Doc. 1. Plaintiffs further allege that Reclamation's actions are causing them harm because water released from Millerton will not be available to satisfy Plaintiffs' own needs.

Plaintiffs name as defendants in this action Reclamation and related federal entities and officers, as well as two water districts that manage wildlife refuges in the San Joaquin Valley, Grassland Water

---

[1] San Joaquin River Exchange Contractors Authority is made up of the Central California Irrigation District, the San Luis Canal Company, Firebaugh Canal Water District and Columbia Canal Company. Doc. 24 at 2.

1

District ("GWD"), and Grassland Resource Conservation District ("GRCD") (collectively, "Grasslands"), which districts Plaintiffs maintain are receiving water from sources other than Millerton, water that Plaintiffs allege should be delivered to the Exchange Contractors to prevent the need for releases from Millerton. Plaintiffs did not name the Exchange Contractors as defendants.

On May 20, 2014, Plaintiffs filed a motion for a temporary restraining order that would, among other things, require the Bureau to provide water to the Exchange Contractors from sources other than Millerton. On May 22, 2014, the Exchange Contractors ("Applicants") moved to intervene in this matter as of right or in the alternative for permissive intervention. Doc. 24.

## II. <u>INTERVENTION AS OF RIGHT.</u>

**A.     Applicants.**

Applicants have been succinctly described by the Ninth Circuit as follows:

> To fulfill the purposes of the Rivers and Harbors Act of 1937, the Secretary of the Interior was given the right to acquire water rights for the development of the CVP. Act of August 26, 1937, Pub. L. No. 75–392, 50 Stat. 844, 850. The Exchange Contractors hold both pre-1914 riparian and appropriative rights to the San Joaquin River. Cal. State Water Rights Bd. Dec. D–935, 80 (1959). The district court noted that the cooperation of the Exchange Contractors made possible the expansion of the CVP and the San Luis Unit. *Westlands Water Dist. v. United States*, 153 F.Supp.2d 1133, 1146–47 (E.D. Cal. 2001) (*Westlands VI*). To provide a reliable source of water for its proposed canals, the Bureau had to assure that the Exchange Contractors' pre-existing rights would be satisfied. [*Westlands Water Dist. v. Patterson*], 864 F. Supp. [1536,] 1539 [(E.D. Cal. 1994)].
>
> In 1939, the Exchange Contractors entered into two contracts with the United States: a Purchase Contract and an Exchange Contract. "Under the Purchase Contract, the Exchange Contractors sold all [of] their San Joaquin River water rights to the United States, except for 'reserved water,' water to which the Exchange Contractors [hold] vested rights. Simultaneously, under the Exchange Contract, the Exchange Contractors agreed not to exercise their [reserved water] rights" to the San Joaquin River, so long as they receive certain volumes of substitute water. *Id*.
>
> Pursuant to the Exchange Contract, the exchange of water is a conditional permanent substitution of water supply. The United States has a right to use the Exchange Contractors' water rights "so long as, and only so long as, the United States does deliver to the Contracting Entities by means of the Project or otherwise substitute water in conformity with this contract." The Exchange Contract defines "substitute water" as "all water delivered ... regardless of source." The contract further provides that "[i]t is

2

> anticipated that most if not all of the substitute water provided the [Exchange Contractors ] hereunder will be delivered to them via the [ ] Delta–Mendota Canal."

*Westlands Water Dist. v. United States*, 337 F.3d 1092, 1096-97 (9th Cir. 2003) (footnote omitted).

Applicants move to intervene as of right or, in the alternative, to permissively intervene.

**B.      Intervention as of Right.**

    **1.      Legal Standard.**

Intervention is governed by Federal Rule of Civil Procedure 24. To intervene as a matter of right under Rule 24(a)(2), an applicant must claim an interest, the protection of which may, as a practical matter, be impaired or impeded if the lawsuit proceeds without the applicant. *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011). The Ninth Circuit applies Rule 24(a) liberally, in favor of intervention, and requires a district court to "take all well-pleaded, non-conclusory allegations in the motion as true absent sham, frivolity or other objections." *S.W. Ctr. for Biological Diversity v. Berg,* 268 F.3d 810, 820 (9th Cir. 2001). A four-part test is used to evaluate a motion for intervention of right:

> (1) the motion must be timely;
>
> (2)    the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action;
>
> (3)    the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and
>
> (4)    the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc.,* 630 F.3d at 1177.

    **2.      Timeliness.**

In assessing timeliness, courts in the Ninth Circuit must consider: (1) the current stage of the proceedings; (2) whether the existing parties would be prejudiced; and (3) the reason for any delay in moving to intervene. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997). Applicants moved to intervene two days after this action was initiated. There can be no debate

3

that the motion is timely.

### 3. **Significant Protectable Interests.**

To demonstrate a "significantly protectable interest," "a prospective intervenor must establish that (1) the interest asserted is protectable under some law, and (2) there is a relationship between the legally protected interest and the claims at issue." *Wilderness Soc.*, 630 F.3d at 1181. Here, among other remedies, Plaintiffs seeks to alter the manner by which Federal Defendants are satisfying the demands of the Exchange Contractors. Applicants have filed a proposed Complaint in intervention seeking judgment against Plaintiffs, Federal Defendants, and all other parties, that the "Exchange Contractors have a first right and priority to receive from the facilities and rights to water available to [] Reclamation in any year ... in order to satisfy the requirements of the Exchange Contract and duties provided in the Purchase Contract." Doc. 24-1. It is not clear whether this Court would have jurisdiction to adjudicate such a claim, given that there appears to be no dispute that Reclamation is obligated to satisfy the Exchange Contractors' rights and will do so this water year, calling into question whether an Article III case or controversy would exist.[2] Nevertheless, plainly at issue in this case is Reclamation's discretion to draw from various sources of supply to satisfy the Exchange Contractors' rights, thereby giving them a "legally protected interest" in the outcome of the litigation.

### 4. **Impairment of Interests.**

Finally, intervention of right is only appropriate where disposition of this action may, as a practical matter, impair or impede Applicants' abilities to protect their interests. This requirement demands only a showing that the applicant "would be substantially affected in a practical sense by the determination made in an action." *S.W. Ctr.*, 268 F.3d at 822. As mentioned above, no party is proposing a remedy in this case that would impair or impede Reclamation's ability to deliver water to the Exchange Contractors. Nevertheless, the Exchange Contractors have an interest in ensuring that any judgment entered in this case does not impede Reclamation's discretion to draw from a variety of

---

[2] The Court does not express a final opinion on this issue at this time.

4

sources to satisfy the Applicants' demands.

### 5. **<u>Existing Parties' Ability to Represent Applicants' Interests.</u>**

The remaining issue is whether Applicants' interests are adequately protected by other parties. In assessing the adequacy of representation, the Ninth Circuit looks at three factors:

(1) whether the existing parties will undoubtedly make all of the applicant's arguments;

(2) whether the existing parties are capable of and willing to make the applicant's arguments; and

(3) whether the applicant offers a necessary element to the proceedings that otherwise would be neglected.

*Id*. at 823. "[T]he requirement of inadequacy of representation is satisfied if the applicant shows that representation of its interests may be inadequate.... [T]he burden of making this showing is minimal." *Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983).

It is "well-settled precedent in this circuit" that "[w]here an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *League of United Latin Am. Citizens*, 131 F.3d at 1305; *see also Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). This presumption is at least arguably triggered here because Applicants and Federal Defendants share a similar objective of upholding Reclamation's decision to release water from Millerton. However, the presumption is rebuttable upon a showing that the applicant and the existing parties "do not have sufficiently congruent interests." *S.W. Ctr.*, 268 F.3d at 823.

Applicants' interests diverge from existing Federal Defendants, who, as operators of the entire CVP, have responsibilities to protect multiple interests. *See Georgia v. United States Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002) (finding federal defendant with interest in management of a resource did not have interests identical to an entity with economic interests in the use of that resource). Moreover, the Applicants are, logically, primarily concerned with ensuring an uninterrupted supply, from whatever the source, while Federal Defendants have the somewhat more complex goal of ensuring Reclamation is capable of satisfying all of its contractors' rights, including those of Grasslands.

...

Applicants satisfy all of the requirements for intervention as a matter of right. It is not necessary to address Applicants' alternative request for permissive intervention.

### III. CONCLUSION

Applicants' motion to intervene as a matter of right is GRANTED, conditioned upon strictly limiting their participation solely to issues about which they can provide non-repetitive, unique information and/or arguments. In the future, the parties shall meet and confer in an effort to avoid duplicative briefing.

**SO ORDERED**
**Dated: May 27, 2014**

                          **/s/ Lawrence J. O'Neill**
                          **United States District Judge**